# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

James Andrew Grimmer,
*Secured Party Creditor*,

          Plaintiff,

v.

Gurstel Law Firm, P.C., Capital One
Bank N.A.,

          Defendants.

Case No. 25-cv-01024-PJS-EMB

**ORDER AND
REPORT AND
RECOMMENDATION**

Plaintiff James Andrew Grimmer filed a lawsuit in state court relating to a debt he allegedly owes. Defendants removed the case to federal court and moved to dismiss the complaint. Plaintiff has filed seven motions, some dispositive and some non-dispositive.

For the reasons below, I recommend granting Defendants' motion to dismiss and denying Plaintiff's dispositive motions. I also order Plaintiff's non-dispositive motions dismissed.

## I. Background.

Plaintiff owed $18,920.85 on his Capital One credit card. (Dkt. No. 1-1 ¶ 8; *see also id.* ¶ 37; Dkt. No. 63 at 1.[1]) He transmitted a "Bill of Exchange"

---

[1] All page numbers to record citations refer to the ECF-created numbers at the top of each page.

"as payment for the alleged debt" on October 29, 2024, and a $500
"settlement payment" on February 7, 2025. (Dkt. No. 1-1 ¶¶ 8–9, 25(b).)
Capital One accepted and cashed the $500 payment. (*Id.* ¶ 25(b).) But,
Plaintiff alleges, "Defendants continued collection efforts without properly
addressing the Bill of Exchange" and without providing "a legally binding
contract or proof of debt ownership" or IRS Form 1099-C. (*Id.* ¶¶ 7, 10–11,
13.)

Plaintiff filed a complaint against Defendants in state court, asserting
claims under the Fair Debt Collection Practices Act ("FDCPA") (Count I), the
Fair Credit Reporting Act ("FCRA") (Count II), the Gramm-Leach-Bliley Act
("GLBA") (Count III), the Uniform Commercial Code ("UCC") (Count IV), the
Internal Revenue Code ("IRC") (Count V), and Minnesota Statute § 332.37
(Count VI). (*Id.* ¶¶ 15–29.)

Defendants filed a notice of removal to this Court on March 19, 2025.
(Dkt. No. 1.) Defendants moved for a two-week extension of time to respond
to the complaint, noting Plaintiff's lack of consent to the extension. (Dkt. No.
8). The Court granted the motion. (Dkt. No. 11.) On April 8, 2025, the day
before their response was due, Defendants filed an amended notice of
removal, correcting a misstatement in the original notice that did not impact
the notice's timeliness or alter the alleged jurisdictional basis for removal.
(Dkt. No. 12.).

The next day, Defendants timely filed a dispositive motion to dismiss Plaintiff's complaint. (Dkt. No. 17)

Plaintiff filed three dispositive motions: a motion to remand to state court (Dkt. No. 13); a supplemental motion to remand (Dkt. No 46); and a motion for default judgment (Dkt. No. 58).

Plaintiff also filed four non-dispositive motions: a motion to strike allegedly defamatory material from Defendants' memorandum in support of their motion to dismiss (Dkt. No. 44); a motion for sanctions relating to these statements (Dkt. No. 45); a motion for accommodations (Dkt. No. 48); and a motion to seal (Dkt. No. 78).

Finally, Plaintiff filed thirty "memorand[a]," "notices," "letters," "addend[a]," and "exhibits." (Dkt. Nos. 24–31, 38–39, 43, 47, 49, 52–53, 55–57, 60, 63–64, 68–69, 73–78, 82.) Consideration of these filings in deciding the pending motions is not procedurally required. But in the interest of giving this pro se Plaintiff the benefit of the doubt, I considered them in deciding the above motions. *See Machen v. Iverson*, Civ. No. 11-1557, 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012).

## II. Discussion.

I address the pending motions as follows. First, I address the dispositive motions: (A) Plaintiff's motion to remand and supplemental motion for remand, (B) Defendant's motion to dismiss, (C) Plaintiff's motion for default judgment. Then, I rule on Plaintiff's non-dispositive motions in the following order: (D) motion to strike, (E) motion for sanctions, (F) motion for ADA accommodation and request for judicial protection, and (G) motion to seal.

### A. Plaintiff's motions to remand.

Plaintiff's motion to remand contends that Defendants' removal of this case to federal court was procedurally defective. (Dkt. No. 13.) Plaintiff's supplemental motion reiterates that contention and adds a contention that this Court lacks jurisdiction. (Dkt. No. 46.)

#### 1. Procedural defect.

##### a. Legal standard.

"The first step in removing a case is 'fil[ing] . . . a notice of removal' in federal court." *Brooks v. Liberty Life Assurance Co. of Bos.*, 937 F.3d 1144, 1145 (8th Cir. 2019) (quoting 28 U.S.C. § 1446(a)) (alterations in *Brooks*). This step must be accomplished within thirty days of a defendant receiving a copy of the initial pleading or being served summons. 28 U.S.C. § 1446(b)(1).

"[T]he second step is to '[p]romptly . . . file a copy of the notice with the clerk of [the] State Court, which shall effect the removal.'" *Brooks*, 937 F.3d at 1145 (quoting § 1446(d)) (alterations in *Brooks*). Because filing a copy of the notice with the state court effects removal, the state court retains jurisdiction until a copy of the notice of removal is filed under section 1446(d). *Anthony v. Runyon*, 76 F.3d 210, 214 (8th Cir. 1996).

The purpose of filing a copy of the notice of removal in state court is to avoid the potential for duplicative labor and inconsistent results among state and federal courts. *See Delavigne v. Delavigne*, 530 F.2d 598, 601 n.5 (4th Cir. 1976); *Hampton v. Union Pac. R.R.*, 81 F. Supp. 2d 703, 705 (E.D. Tex. 1999). So long as this purpose "has not been thwarted or undermined by a technical or procedural defect resulting [in] a delayed notice of filing, remand is not warranted." *Plummer v. Lincoln Life Assurance Co. of Bos.*, No. CV 22-5102, 2022 WL 4365711, at *2 (W.D. Ark. Sept. 21, 2022).

Courts assessing procedural defects under § 1446(c) typically consider: (1) the number of days that elapse between filing the notice of removal in federal court and filing the copy of that notice in state court; (2) whether the state court undertook significant action during that interim; and (3) whether that action adversely affected either party. *See Bohanna v. Hartford Life & Accident Insurance Co.*, 848 F. Supp. 2d 1009, 1014 (W.D. Mo. 2012).

5

### b. Application.

There is no question that Defendants satisfied the first step of the removal process. The summons and complaint were served on Defendants around February 26, 2025. (Dkt. No. 1 at 1.) Defendants filed the notice of removal twenty-one days later, on March 19, well within § 1446(b)(1)'s thirty-day deadline. (*Id.*) Plaintiff does not contest timeliness as to this step.

Plaintiff's procedural-defect argument focuses on step two—whether Defendants promptly filed a copy of the notice of removal in state court. Defendants' March 19 notice of removal erroneously represented that Plaintiff had commenced the state court action but not yet filed his summons and complaint. (*Id.* ¶¶ 1, 3.) In fact, Plaintiff *had* filed these documents in state court. (Dkt. No. 12 at 1–2; *see also id.* at 45.) Laboring under the contrary misimpression, Defendants attempted on March 19 to file a copy of the removal notice in state court under a new case number, which the state court rejected. (*Id.* at 2; *see also id.* at 29–31; Dkt. No. 36-1 ¶¶ 4–6.) On April 4, 2025, Plaintiff appropriately called Defendant's attention to the defect. (Dkt. No. 36 at 2.)

Upon learning of their error, Defendants filed an amended notice of removal in federal court on April 8, 2025, twenty days after the original notice was filed in federal court. (Dkt. No. 12.) The amended notice correctly reflected that Plaintiff had indeed filed his summons and complaint in state

6

court. (*Id.* at 1–2.) This correction allowed Defendants to file a copy of the

amended notice of removal in the correct state court case number, which they

did on April 8. (Dkt. No. 36-1 ¶ 12.) Then, Defendants filed a copy of both the

original notice of removal and refiled the amended notice of removal in state

court on April 16, 2025. (*Id.* ¶ 13.)

The state court docket reflects some activity between March 19, when

Defendants filed the notice of removal in federal court, and April 16, when

they filed a copy of that notice in state court. *See generally* Register of Action,

*James Andrew Grimmer v. Capital One N.A., Gurstel Law Firm P.C.*, No. 10-

CV-25-290 (Minn. Dist. Ct.).[2] Importantly, the state court took only

ministerial actions during this time; no substantive court activity is reflected

on the docket. *Id.* For his part, Plaintiff filed several motions on that docket.

On March 21, Plaintiff filed a motion for sanctions against Defendants for

their alleged failure to furnish discovery and for punitive damages based on

their allegedly unfair debt-collection activities. *Id.* On April 3, Plaintiff filed a

motion for default judgment with a supporting affidavit and certificate of

service and, separately, a "motion to strike Defendant's filings or evidence for

procedural default and effective removal procedure." *Id.* The latter motion

---

[2] The Court takes judicial notice of the state court filings as they are public
records. *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005);
*Rubbelke v. Zarembinski*, No. 23-cv-0707-PJS-ECW, 2023 WL 3094371, at *1
n.1 (D. Minn. Apr. 26, 2023).

expressly states that Defendants filed a notice of removal in federal court on March 19. *Id.* Plaintiff made nearly a dozen filings in state court after he was notified that Defendants had removed the case in federal court; more than half of these were filed *after* Defendants filed their April 16 copy of the notices of removal in state court. *Id.*

I find that Defendants' filing of the copy of the notice of removal in state court satisfies § 1446(d)'s promptness requirement. Defendants attempted to file a copy of the notice in court on the same day they filed the notice in federal court; they corrected the error less than a month later by filing an amended notice of removal in federal court and a copy thereof in state court. *See Brooks*, 937 F.3d at 1145 ("removal is effective upon '*fil[ing]* a copy of the notice [of removal] with the clerk of [the] State court,' regardless of how state law might treat the notice after it is filed" (quoting 28 U.S.C. § 1446(d)) (emphasis added, brackets in original). Arguably, Defendants' initial "act . . . of submitting [the notice] . . . with a court clerk or record custodian" satisfied the filing requirement, despite the state court choosing to reject it as filed in the wrong case. *Id.* (internal quotation marks and citation omitted).

The amended notice of removal sought to correct a technical mistake; it did not alter the jurisdictional basis of removal or the timeliness of removal under § 1446(b)(1). *See Jones v. Kremer*, 28 F. Supp. 2d 1112, 1113 (D. Minn.

8

1998) (stating courts should allow removal parties to amend their notice of removal to "correct technical mistakes"). The state court undertook no substantive activity during the time between the federal and state court filings. And Plaintiff's state court filings during that interim acknowledged that Defendants had filed the notice of removal in federal court, indicating that he was aware of it. Indeed, he timely moved to remand within thirty days of the March 19 notice of removal, notwithstanding the state court filing delay. (*See* Dkt. No. 13.) *See* 28 U.S.C. § 1447(c).

Courts have found delays of a month or more to be sufficiently prompt for § 1446(d) purposes under similar circumstances.

For example, in *Bohanna*, the court noted that the defendants delayed sixty-seven days between the two filings and that "no significant action was taken in state court during th[at] . . . period such that either party had been adversely affected by the delay." 848 F. Supp. 2d at 1014. The court therefore determined that the defendants had filed the state court copy sufficiently promptly under § 1446(d) and denied the plaintiff's motion to remand. *Id.*

In *Lewis v. US Farathane*, No. 25-06008-CV-SJ-GAF, 2025 WL 1232504, at *1 (W.D. Mo. Apr. 29, 2025), the defendants timely filed a notice of removal in federal court and filed a copy of the notice in state court under an incorrect case number. The defendants learned of their error when the plaintiff filed a motion for default judgment in state court. *Id.* They then filed

9

a notice of removal in the correct state court case. *Id.* The state court's only
activity in the interim was to set and then continue a case-management
conference. *Id.* at 2. The plaintiff was aware of the removal to federal court
and timely moved to remand. *Id.* at 2. The court denied the motion. *Id.*[3]

Here, as in the above cases, Defendants' misfiling caused only a brief
delay, during which the state court undertook no significant action.
Defendants' filing of the copy of the notice of removal was thus adequately
prompt.

Plaintiff states that the initial procedural irregularity prejudiced him
"by coercing [him] into erroneously believing the removal was final,
prompting [him] to accept an unnecessary and unjust federal extension until
April 9, 2025." (Dkt. No. 13 at 2.) Plaintiff appears to suggest that he
consented to Defendants' request for an extension of time to respond to his

---

[3] *See also Brown v. Santander Consumer USA Inc.*, No. 3:24-CV-00665-NJR,
2025 WL 455373, at *6 (S.D. Ill. Feb. 11, 2025) (twenty-eight-day delay
sufficiently prompt); *Almonte v. Target Corp.*, 462 F. Supp. 3d 360, 366
(S.D.N.Y. 2020) (thirty-four-day delay adequately prompt); *Bajrami v.
Reliance Standard Life Ins. Co.*, 334 F. Supp. 3d 659, 662 n. 14 (E.D. Pa.
2018) (twenty-eight delay sufficiently prompt); *Ciglar v. Ruby Tuesday, Inc.*,
No. 09-239, 2009 WL 737367, at *4 (E.D. Pa. Mar. 19, 2009) (thirty-three-day
delay sufficiently prompt); *Macklin v. Flexi USA, Inc.*, No. 4:07CV746 SNL,
2007 WL 2360130, at *1–2  (E.D. Mo. Aug. 14, 2007) (forty-three-day delay
sufficiently prompt); *Nixon v. Wheatley*, 368 F. Supp. 2d 635, 640 (E.D. Tex.
2005) (twenty-two-day delay sufficiently prompt); *Calderon v. Pathmark
Stores, Inc.*, 101 F. Supp. 2d 246, 248 (S.D.N.Y. 2000) (one-month delay was
"relatively short" and "harmless").

complaint because he believed the removal was "final." He further argues that the "dual-jurisdiction litigation" in this case unreasonably burdened him. (Dkt. No. 46 at 1.)

But Plaintiff never consented to the extension request. Instead, Defendants' extension motion presumed that Plaintiff opposed the request. (Dkt. No. 8 at 2.) The Court granted the extension motion despite Plaintiff's non-consent. (Dkt. No. 11.) Plaintiff thus cannot now claim that he was induced to consent to the extension.

If Plaintiff is arguing that he was burdened or prejudiced by making filings in the state court action after removal, that was his choice. Plaintiff's state court filings indicate that he was aware of the notice of removal. He timely moved to remand. Plaintiff cannot reasonably claim prejudice under these circumstances. *See Almonte v. Target Corp.*, 462 F. Supp. 3d 360, 366 (S.D.N.Y. 2020) (denying remand when state court took no action during thirty-four-day delay and plaintiff received notice of the removal one day after it was filed in federal court); *Plummer*, 2022 WL 4365711, at *2 (denying remand when twenty-day delay did not prevent plaintiff from timely moving to remand in federal court); *cf. Hanratty v. Watson*, No. 10-cv-662-JPG, 2010 WL 4978105, at *5–6 (S.D. Ill. Dec. 2, 2010) (remand warranted for § 1446(d) procedural defect when defendant's failure to notify both state

court *and* plaintiff of removal for fifty-one days and state court had undertaken significant action in the interim).

Moreover, the half-dozen documents that Plaintiff filed in the state court action after removal do not appear burdensome. The filings were made through the state court's electronic filing system, and the volume of filings that Plaintiff made indicates the process was not unduly burdensome for him.

The cases that Plaintiff relies on to support remand are inapposite. (*See* Dkt. No. 13 at 3.) In *Murphy Brothers v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–56 (1999), the Supreme Court addressed when a defendant must file a notice of removal in federal court under § 1446(b). As discussed, the timeliness of the federal filing is not an issue here. In *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 103 (1941), the Court addressed whether a plaintiff may remove his own case to federal court when a defendant counter- or cross-claims. That issue also is not before this Court. In *Benson v. Si Handling Systems, Inc.*, 188 F.3d 780, 781–82, 783 (7th Cir. 1999), the court remanded upon holding that the defendant could not attempt to remove a case more than once. This, too, is of no matter here. This case also is unlike *Polito v. Molasky*, 123 F.2d 258, 261–62 (8th Cir. 1941), and *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108,1 11 (3d Cir. 1990), where the courts remanded due to diversity jurisdiction defects that are not present in this case.

12

In short, I find that the state court filing was adequately prompt under § 1446(d) and that Plaintiff was not prejudiced by the brief delay. I therefore recommend denying Plaintiff's motion to remand (Dkt. No. 13) and supplemental motion to remand (Dkt. No. 46) due to procedural defect.

### 2. Federal jurisdiction.

In his supplemental motion to remand, Plaintiff alleges that this Court lacks jurisdiction for two reasons.

First, Plaintiff contends that Defendants violated the forum-defendant rule of § 1441(b)(2) because one or both Defendants were Minnesota-based. (Dkt. No. 46 at 1.) Section 1441(b)(2) provides that "a civil action otherwise removable *solely on the basis of the jurisdiction under section 1332(a)* of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Violation of this rule does not strip a court of jurisdiction. *Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1054 (8th Cir. 2020). In any case, § 1441(b)(2) is plainly inapplicable here, where the basis for removal is not diversity jurisdiction under § 1332, but federal-question jurisdiction under 28 U.S.C. § 1331. (*See* Dkt. No. 1 ¶¶ 10, 11.)

Second, Plaintiff contends that there is no jurisdiction under § 1331. (Dkt. No. 46 at 1.) Section 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the

United States." 28 U.S.C. § 1331. Plaintiff brought this action under various federal laws. (Dkt. No. 1-1 ¶¶ 15–27.) Defendant accordingly alleged federal-question jurisdiction under § 1331 in their notice of removal. (*See* Dkt. No. 1 ¶¶ 10–11.) Because this Court has jurisdiction under § 1331, I recommend denying Plaintiff's supplemental motion to remand (Dkt. No. 46) for lack of jurisdiction.

### B. Defendants' motion to dismiss.

#### 1. Legal standard.

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Perez v. Does 1–10*, 931 F.3d 641, 646 (8th Cir. 2019). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Twombly*, 550 U.S. at 555). Dismissing a facially implausible complaint under Rule 12(b)(6) "serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial

14

and trial activity." *Stringer v. St. James R-1 Sch. Dist.,* 446 F.3d 799, 802 (8th Cir. 2006) (citation omitted).

Courts must liberally construe pleadings of pro se plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). The liberal construction rule does not excuse a pro se plaintiff from alleging sufficient facts to support the claims he advances. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Nor does it excuse him "from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *see Grimmer v. Citibank, N.A.*, No. 25-cv-2758-ECT-DLM, 2025 WL 3124051, at *1 (D. Minn. Nov. 7, 2025).

### 2.  FDCPA claim.

To survive a motion to dismiss an FDCPA claim, a plaintiff must plausibly allege that (1) he has been the object of collection activity, (2) the defendant is a debt collector under the statute, and (3) the defendant has engaged in an act or omission prohibited by the statute.

Here, Plaintiff alleges that Defendants violated the FDCPA by accepting a $500 payment—which Plaintiff purported to offer as settlement of his $18,920.85 debt—and then continuing efforts to collect the remaining amount owed. Plaintiff claims that Defendants' conduct involved false, deceptive, or misleading representations in connection with the collection of a debt in violation of 15 U.S.C. § 1692e, failure to provide validation of the debt

15

upon request in violation of § 1692g(b), and unfair or unconscionable means to collect or attempt to collect the debt in violation of both §§ 1692e and 1692f. (Dkt. No. 1-1 ¶¶ 15–16.)

Even construed liberally, these allegations fail plausibly to allege the second element as to Defendant Capital One and the third FDCPA elements as to either Defendant.

### a. Debt collector.

"The FDCPA imposes civil liability only on debt collectors, as they are defined by the statute." *Volden v. Innovative Fin. Sys., Inc.,* 440 F.3d 947, 950 (8th Cir. 2006); *see also Grimmer*, 2025 WL 3124051, at *4–5. The statute defines a debt collector as "(1) any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or (2) who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Generally, this definition does not include creditors." *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 370 (D. Minn. 2013); *see also* 15 U.S.C. § 1692a(6)(A) (expressly excluding from debt-collector definition "officer[s] or employee[s] of a creditor while, in the name of the creditor, collecting debts for such creditor"). An exception exists for "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third

16

person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6); *see also Hartley*, 295 F.R.D. at 370.

Here, Plaintiff alleges that Defendant Capital One "is a national banking association." (Dkt. No. 1-1 ¶ 3.) Plaintiff does not allege that Defendant Capital One's principal business purpose is debt collection or that it regularly collects debts owed to an entity other than itself. The complaint appears to allege that Capital One is a creditor. (*Id.* ¶¶ 7–8.) And Plaintiff does not allege that, in the process of collecting its own debts, Capital One used a different name that would indicate that a third person was collecting or attempting to collect Plaintiff's debt. The complaint thus fails plausibly to allege the second element of an FDCPA claim as to Defendant Capitol One.

Plaintiff alleges that Defendant Gurstel Law Firm is "a professional corporation and law firm specializing in debt collection." (Dkt. No. 1-1 ¶ 4.) The complaint does not allege whether Gurstel Law Firm is a third-party collection agent that works for the debt owner—here, Capital One—or whether it purchased Plaintiff's debt from Capital One, either of which allegation would bear on the debt-collector question. *See Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 83 (2017). Plaintiff's memorandum in opposition to the motion to dismiss explains that discovery will shed more light on the "precise relationship between Capital One and Gurstel." (Dkt. No. 25 at 3.)

17

Plaintiff's allegations as to Gurstel are threadbare. But even if the complaint plausibly alleged that Defendant Gurstel Law Firm is a debt collector, I find that Plaintiff has not adequately pleaded the third element of the FDCPA.

### b. Acts prohibited by the FDCPA.

Plaintiff appears to assert various theories for how Defendants engaged in acts prohibited by the FDCPA: that Defendants engaged in an act or omission prohibited by the statute.

First, Plaintiff alleges that Defendants refused to honor his "Bill of Exchange" or $500 self-styled "settlement payment" to discharge his debt. (Dkt. No 1-1 ¶¶ 9–10.)

Courts in this district have rejected similar claims. For example, in *Knapp v. Wings Credit Union*, the plaintiff alleged that by sending the defendant documents containing his signature and specific language, he could convert monthly billing statements and the notes underlying mortgage and home-equity loan and monthly billing statements into "negotiable instruments" that could be used as payments to satisfy his debts. No. 24-cv-434-DWF-ECF, 2024 WL 4774537, at *2–3 (D. Minn. Nov. 8, 2024), *aff'd*, No. 24-3359, 2025 WL 837911 (8th Cir. Mar. 18, 2025). The court rejected the theory and dismissed the complaint. *See id*. In *Connell v. Wells Fargo Bank, N.A.*, the plaintiff alleged that a "bill of exchange" that he tendered satisfied

18

his mortgage debt and that Defendants were liable for refusing to honor the tender. No. 10-cv-3133-MJD-FLN, 2011 WL 4359979, at *2 (D. Minn. Sept. 19, 2011). The court determined that the "'Bill of Exchange' . . . does not state any facts that would support its acceptance as a valid negotiable instrument." *Id.*

Indeed, such claims have been "dismissed as frivolous . . . [f]rom coast to coast." *Id.* at *2 (citing cases); *see also Harp v. Police & Fire Fed. Credit Union, C/A*, No. 23-2577, 2023 WL 5152625, at *2 (E.D. Pa. Aug. 10, 2023) (finding that "because all of [plaintiff's] claims rest upon her mistaken belief that her 'bill of exchange' was valid legal tender and are based on a fundamental misunderstanding of the operation of a credit card, I will dismiss the Complaint with prejudice and without leave to amend."); *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 760 (W.D. Va. 2007) (rejecting borrower's "claim that her Bill of Exchange is a legitimate negotiable instrument"), *aff'd*, 282 F. App'x 260 (4th Cir. 2008); *Thomas v. All In Credit Union*, No. CV 23-00215-TFM-B, 2023 WL 9197752, at *8 (S.D. Ala. Dec. 7, 2023) (same), *report and recommendation adopted*, No. 1:23-CV-215-TFM-B, 2024 WL 312682 (S.D. Ala. Jan. 25, 2024).

Here, too, Plaintiff does not state any facts that would support his theory that the "Bill of Exchange" and self-styled $500 "settlement payment"

were valid negotiable instruments. *See Connell*, 2011 WL 4359979, at *2. I recommend dismissing this FDCPA claim on this ground.

Second, Plaintiff alleges that Defendants violated § 1692g of the FDCPA by refusing to sign and return his "settlement offer" accepting the $500 payment as settlement of his debt. (Dkt. No. 1-1 ¶¶ 11, 16(b).) Section 1692g generally provides that a debt collector must provide notice of debt, verify the debt, and cease debt-collection activities if the consumer disputes the debt in writing. 15 U.S.C. § 1692g(a)–(b). Nowhere does the provision state that a debt collector must provide a legally-binding contract or proof of debt ownership. *See Burgi v. Messerli & Kramer P.A.*, No. 08-cv-419-PJS-JJ, 2008 WL 4181732, at *5 (D. Minn. Sept. 5, 2008) (stating that verification under the statute does not require the debt collector to provide the consumer with evidence sufficient to conclusively establish liability for the debt in a court action). And Plaintiff does not allege that Defendants have violated the statute's verification requirements such as they are. Plaintiff therefore fails to state an FDCPA claim based on a § 1692g-violation theory.

Third, Plaintiff makes threadbare allegations that Defendants used unfair or unconscionable means to collect debt in violation of §§ 1692e and 1692f because they "engaged in false representations, unfair collection practices, and failure to validate debt." (Dkt. No. 1-1 at 21.) Plaintiff does not allege what these alleged false representations or unfair practices were.

20

Presumably, his allegation that Defendants failed to validate the debt is redundant of his § 1692g claim, discussed above.

But even accepting these allegations as facially plausible, the claim fails. Section 1692f provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The statute provides a non-exhaustive list of prohibited conduct. *Id.* Courts have held that when a debt collector's conduct violates other FDCPA provisions and the plaintiff does not allege conduct independently constituting a § 1692f violation, then the latter provision does not apply: "[Section] 1692f was written as a safety net to ensure that no unlawful conduct by debt collectors slipped through the cracks, not as a mechanism for doubling down on the same allegations or providing a fallback position for conduct of a type addressed by another section as to which Plaintiff ultimately fails to establish liability." *Fisher v. Seterus, Inc.*, No. 19-cv-1382-MJD-HB, 2019 WL 5865605, at *8 (D. Minn. Oct. 21, 2019), *report and recommendation adopted,* 2019 WL 5865449 (D. Minn. Nov. 8, 2019); *see also Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008) (citing cases).

Here, Plaintiff has not "uncover[ed] a separate factual predicate to support a § 1692f claim." *Fisher*, 2019 WL 5865605, at *8. Indeed, Plaintiff appears to use the same factual predicates to support his § 1692e and 1692g

21

claims. Because his "§ 1692f claim alleges "nothing new," this theory of FDCPA liability also fails. *Id.*

In short, Plaintiff has failed to state the essential elements of an FDCPA claim. Thus, I recommend that Count I of his complaint be dismissed.

### 3. FCRA claim.

In Count II, Plaintiff alleges that Defendants violated § 1681s-2(b) of the FCRA by "furnishing inaccurate information to credit reporting agencies without proper validation" and "failing to correct and update information supplied to" these agencies. (Dkt. No. 1-1 ¶¶ 17–20.) *See also* 15 U.S.C. § 1681s-2(b).

FCRA § 1681s-2(b) comes into play when a consumer disputes a credit report to a consumer-reporting agency. *See Benjamin v. Experian Info. Sols., Inc.*, No. CIV-14-810-JRT-JJG, 2014 WL 3509044, at *2–3 (D. Minn. July 15, 2014). That creates an obligation on the creditor consumer reporting agency to reasonably investigate the dispute and to notify the furnisher of information about the dispute, including all relevant information. *See id.* (citing 15 U.S.C. § 1681i(a)). Consumer or credit reporting agencies include entities like Experian, Equifax, and TransUnion, among others. Once the consumer-reporting agency provides that notice to the furnisher, the furnisher must conduct its own investigation and report to the agency on the accuracy of the disputed information. *See id.* (citing 15 U.S.C. § 1681s-2(b)).

In other words, § 1681s-2(b) is triggered only by "notice received from a *consumer-reporting agency*, not notice received from a *consumer*." *Anderson v. Experian Info. Solutions, Inc.,* No. 08-cv-5151-PJS-JJK, 2009 WL 3644923, at *3 (D. Minn. Nov. 2, 2009) (emphases in original), *aff'd sub nom. Anderson v. EMC Mortg. Corp.,* 631 F.3d 905 (8th Cir.2011); *see also Grimmer*, 2025 WL 3124051, at *4.

Here, Plaintiff does not allege that he disputed a credit report, triggering a consumer-reporting agency investigation. Nor does he allege that a consumer-reporting agency notified either Defendant of any such reported dispute. Plaintiff therefore does not plausibly allege a violation of § 1681s-2(b). Indeed, in his Complaint, Plaintiff doesn't even allege that he disputed the debt directly to either Defendant. I recommend that Count II be dismissed.

### 4. Gramm-Leach-Bliley Act, Internal Revenue Code, and Minnesota Statute § 332.37.

Plaintiff alleges claims under the GLBA, Minnesota Statute § 332.37, and the IRC.

Plaintiff "acknowledges that these statutes do not expressly create standalone private rights of action." (Dkt. No. 25 at 9.) Courts have held that "no private right of action exists for an alleged violation of the GLBA." *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007).

23

Similarly, "no private right of action exists under the Minnesota Collection Agencies Act." *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1037 (D. Minn. 2010) (discussing Minn. Stat. § 332.31), *aff'd*, 413 F. App'x 925 (8th Cir. 2011); *accord Scheffler v. Alltran Fin., LP*, No. 18-CV-415-DWF-LIB, 2018 WL 4126447, at *7 (D. Minn. Aug. 13, 2018), *report and recommendation adopted*, No. CV 18-415-DWF-LIB, 2018 WL 4120076 (D. Minn. Aug. 29, 2018), and *report and recommendation adopted*, No. CV 18-415-DWF-LIB, 2019 WL 93390 (D. Minn. Jan. 3, 2019).

Plaintiff contends that Defendants failed to issue an IRS Form 1099-C for cancellation of debt upon reporting his account as charged off, thus violating 26 U.S.C. § 6050P of the IRC. (Dkt. No. 1-1 at 10.) But no private right of action exists for alleged violations of § 6050P. *Grimmer*, 2025 WL 3124051, at *5. Plaintiff acknowledges this as well. (Dkt. No. 25 at 10.)

Because no private right of action exists for Counts III, V, and VI, I recommend that these claims be dismissed.

### 5. UCC claim.

Count IV of Plaintiff's complaint alleges that Defendants violated UCC § 9-210 by failing to provide accounting records related to the alleged debt and improperly handling negotiable instruments. (Dkt. No. 1-1 ¶¶ 24–25.)

Section 9-210 allows debtors to request "an accounting of the unpaid obligations *secured by collateral*" so long as the request "reasonably

identif[ies] the transaction or relationship that is the subject of the request." U.C.C. § 9-210(a)(2) (emphasis added). A "secured party" generally must respond to the request "within 14 days of receipt." U.C.C. § 9-210(b).

The UCC is not governing law, and a UCC provision does not become law until a state adopts it. *See Grimmer*, 2025 WL 3124051, at *3. Here, Plaintiff does not identify a state version of § 9-210 upon which his claim relies. But Minnesota and Virginia, two states with connections to this case, have adopted provisions identical to UCC § 9-210. *See* Minn. Stat. § 336.9-210(a)(2), (b); Virg. Stat. § 8.9A-210(a)(2), (b).

Assuming Plaintiff meant to bring his UCC claim under one of these state statutes, he has not plausibly alleged a claim. The statutes apply only to collateralized debts. *See* Minn. Stat. § 336.9-210(a)(2), (b); Virg. Stat. § 8.9A-210(a)(2), (b). The complaint does not allege that Plaintiff's debt was secured by collateral. Thus, neither of the potentially applicable state law versions of § 9-210 apply.

Although it's unclear, Plaintiff also appears to allege that Defendants violated the UCC by continuing their collection efforts despite accepting his tender under UCC § 3-603. (Dkt. No. 1-1 ¶¶ 10, 25(b).) That provision states that if tender of payment of an obligation is refused, "there is discharge, to the extent of the amount of the tender." U.C.C. § 3-603(b). Plaintiff's theory seems to be that Defendants' rejection of his "Bill of Exchange" and $500

25

"settlement payment" should have discharged his debt under § 3-603(b), and that Defendants continued collection efforts therefore violated the UCC.

Even if Plaintiff had properly identified a relevant state statute adopting some this UCC provision, and even if Plaintiff's debt-satisfaction theory had merit, Plaintiff has not established that there is a private right of action under § 3-603. *See Shabazz v. Crawford*, No. 18-cv-644-JMV-CLW, 2018 WL 3405260, at *2 (D.N.J. July 11, 2018) (citing *Jones v. Wells Fargo Home Mortg.*, No. 4:13CV1762 CDP, 2014 WL 307055, at *3 (E.D. Mo. Jan. 28, 2014)).

Finally, Plaintiff argues that he has standing to bring his UCC claims as a "Secured Party Creditor" recognized by the State of New York. (Dkt. No. 25 at 4.) First, allegations related to any "secured party creditor" status are absent from the Complaint. Second, Plaintiff provides no legal support for the use and validity of a "secured party creditor" status for someone in his position. I was unable to locate any of the three cases that Plaintiff cites for this proposition. (Dkt. No. 25 at 9.) They appear to be hallucinated or otherwise mis-cited cases.[4] In fact, courts reject the idea of a "secured party creditor" outright. *See, e.g.*, *United States v. Benabe*, 654 F.3d 753, 767 (7th

---

[4] There are well over a dozen citations in Plaintiff's brief opposing the motion to dismiss that I could not locate, despite searching by party names and citation numbers. These appear to be entirely hallucinated. There are also at least a half dozen that do not stand for the proposition that Plaintiff claims.

Cir. 2011) (referring to claims as a "secured-party creditor," "[t]hese theories should be rejected summarily. . ."); *Vasquez v. Cal. Hwy. Patrol*, No. 2:15-cv-756, 2016 WL 232332, at *2 3 (E.D. Cal. Jan. 19, 2016) (rejecting plaintiff's "secured party creditor" theory and dismissing complaint without leave to amend). I reject this argument.

I therefore recommend dismissing Count IV of Plaintiff's complaint.

\*    \*    \*    \*    \*

Courts have discretion to decide between dismissing a complaint with or without prejudice. *See Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). Dismissing with prejudice typically is appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136-DWF-LIB, 2013 WL 5426049, at *16 (D. Minn. Sep. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650-RHK-JMM, 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting report and recommendation), or when the record makes clear that any amendment would be futile, *see Paisley Park*, 361 F. Supp. at 880 n.7.

I recommend that Plaintiff's complaint be dismissed with prejudice. Plaintiff has not sought leave to amend or stated what allegations he might add through amendment to cure the problems that Defendants' motion

identifies.[5] Plaintiff's claims rest on a legal theory of debt relief that lacks merit. I therefore fail to see how amending the complaint could address the shortcomings identified above. As amendment would be futile, I recommend dismissing the complaint with prejudice.

### C. Plaintiff's motion for default judgment.

Plaintiff filed a motion for default judgment under Federal Rule of Civil Procedure 55(b). (Dkt. No. 58 at 1.) The undersigned recommends that the motion be denied.

First, the motion is premature. Except in cases where Federal Rule of Civil Procedure 55(b)(1) applies, entry of default judgment entails a two-step process. The initial step requires entry of a party's default by the clerk of court. Fed. R. Civ. P. 55(a). After the clerk has entered default, the party seeking the entry of default judgment files a motion for default judgment

---

[5] Plaintiff's brief in opposition to Defendants' motion to dismiss repeatedly references "Exhibits 001–0052," which purportedly support his claims and which he complains Defendants ignored. (*See, e.g.,* Dkt. No. 25 at 6.) Plaintiff never filed these exhibits in federal court, nor did he attach them to his state-court complaint or otherwise file them in state court. A party's pleading or attachments thereto must allege facts sufficient to meet the elements of each claim, and Plaintiff's here did not. Plaintiff's references to the exhibits in his opposition brief are insufficient and would be insufficient even if he had attached them to the brief. *See Morgan Distrib. Co. v. Unidymanic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (holding a party may not seek to amend his complaint by way of briefs in opposition to a motion to dismiss or other filings) (internal quotation marks and citation omitted); *Benson v. Piper*, 17-cv-17-266-DWF-TNL, 2019 WL 1307883, at *3 (D. Minn. Mar. 22, 2019).

under Rule 55(b)(2). When a party moves for default judgment before default is entered under Rule 55(a), the motion is premature and default judgment cannot be entered. *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (explaining that "entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)") (emphasis added).

Second, even if the clerk had entered default upon Plaintiff's application, Plaintiff's motion fails to state a proper basis for default judgment. Plaintiff contends that default judgment is warranted because Defendants were served but failed to timely answer or otherwise respond. (Dkt. No. 58 at 1.) This is incorrect: Defendants did timely respond by filing their notice of removal within the § 1446(b)(1)-mandated period of thirty days and their motion to dismiss by the court-ordered deadline. A motion to dismiss is one of the available responses to a complaint. *See* Fed. R. Civ. P. 12(b). If Plaintiff contends that the motion to dismiss was invalid due to a failure to more quickly file a copy of the notice of removal in state court, that contention is baseless. As discussed above, the notice of removal involved a technical error that Defendants promptly cured and that did not impact the jurisdictional basis for removal or the timeliness of Defendants' removal and motion to dismiss.

Because Defendants timely responded, there is no basis for entry of default under Rule 55(a) or for default judgment under Rule 55(b). The

undersigned recommends that Plaintiff's motion for default judgment be denied with prejudice on these grounds.

### D. Plaintiff's motion to strike.

Transitioning to the non-dispositive motions, Plaintiff filed a motion to strike defamatory material from Defendants' memorandum in support of their motion to dismiss, citing Federal Rule of Civil Procedure 12(f). (Dkt. No. 44.) Plaintiff alleges that "multiple sections" of Defendants' memorandum are "immaterial, impertinent, and scandalous" and include "inflammatory accusations unsupported by the record, defamatory terminology targeting Plaintiff's legal status, and false implications of extremist ideology." (*Id.* at 1.)

This motion is denied. The Federal Rules of Civil Procedure do not permit a motion to strike that targets a memorandum submitted in conjunction with a dispositive motion. *See Carlson Mktg. Group, Inc. v. Royal Indem. Co.,* Civ. No. 04-CV-3368-PJS-JJG, 2006 WL 2917173, at *2 (D. Minn. Oct. 11, 2006). And "courts in this District have consistently denied motions to strike "memoranda, affidavits, or anything else that is not a pleading for the purposes of Rule 12(f)." *Williams v. Walski*, No. 12-CV-2954-SRN-JSM, 2014 WL 4639580, at *20 (D. Minn. Sept. 16, 2014) (quoting *Vogel v. Turner,* Civ. No. 11–0446-PJS-JJG, 2013 WL 358874, at *9 (D. Minn. Jan. 8, 2013) and citing additional cases); *see also VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1047 (D. Minn. 2000).

30

The proper mechanism for challenging an adverse party's statements in a motion to dismiss is in a memorandum opposing that motion. *See Carlson*, 2006 WL 2917173, at *2 (holding that arguments about whether terminology and evidence may be considered in a dispute "belong in memoranda supporting or opposing" dispositive motions and "are not arguments that belong in memoranda supporting or opposing 'motions to strike.'")

Plaintiff has adequately addressed Defendants' statements in his opposition briefing. These statements are irrelevant to my recommendations for resolving the pending motions. I did not give any weight to the allegedly defamatory statements in reaching the conclusions in this Order and Report and Recommendation. Plaintiff's motion to strike is denied.

### E. Plaintiff's motion for sanctions.

Plaintiff moves for a court order sanctioning Defendants for their allegedly defamatory statements in their motion-to-dismiss memorandum under Federal Rule of Civil Procedure 11(c). (Dkt. No. 45.) Plaintiff claims that Defendants intended these statements to harass, delay, and prejudice him. (*Id.* at 1.)

Rule 11(c) permits sanctions when a party violates Rule 11(b). Fed. R. Civ. P. 11(c). Rule 11(b) requires a filing party to certify that they are not presenting their pleadings for any improper purpose, such as to harass, unnecessarily delay, or needlessly increase in the cost of litigation; that their

31

legal contentions are not legally frivolous and have or are likely to have evidentiary support upon further investigation or discovery; and that denials of factual contentions are warranted or reasonable. Fed. R. Civ. Pro. 11(b)(1)–(4).

A Rule 11(c) motion must describe the specific conduct alleged to have violated Rule 11(b). Fed. R. Civ. P. 11(c)(1). The motion "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. Pro. 11(c). This is known as the "safe harbor" provision. *Kelly v. Aman Collection Servs.,* 03-cv-6091-DWF-JSM, 2007 WL 38913, at *2–3 (D. Minn. 2007).

Here, Plaintiff has not shown that he followed the procedures required by Rule 11 for bringing a motion for sanctions. Based on the record before me, Plaintiff filed and served his motion sanctions without offering any opportunity to Defendants to rectify any allegedly false statements, thus violating the safe-harbor provision. *See id.* at *2; *see also Williams*, 2014 4639580, at *20. I therefore must deny the motion.

### F. Plaintiff's motion for ADA accommodation and request for judicial protection.

Plaintiff moves the Court for accommodations and judicial protection under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. (Dkt. No. 48.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute defines who qualifies as an "individual with a disability," *id.* § 12131(2), and what constitutes a "disability," *id.* § 12102.

Plaintiff's motion seeks "to formally notify the Court of Plaintiff's documented disability and procedural challenges, and to request specific accommodations in light of documented litigation misconduct by Defendants." (Dkt. No. 48 at 1.) Plaintiff alleges that he has a "medically documented cognitive disability involving short-term memory loss and episodic processing deficits" that "materially impairs [his] ability to navigate complex, duplicative litigation unless procedural clarity and fairness are maintained." (*Id.* at 1–2.) He further alleges that Defendants' conduct has "denied him equal access to litigation." (*Id.* at 2.) He therefore asks the Court to "take formal judicial notice of [his] ADA Title II-protected status" and consider this status in evaluating pending motions, sanctions, and other relief sought. (*Id.*)

33

Plaintiff supplies memoranda and documents in support of his motion; these filings reiterate Plaintiff's allegations but do not include any supporting medical or other factual documentation of disability. (*See generally* Dkt. Nos. 49, 52, 55.) Moreover, Plaintiff attaches no materials to the complaint and briefs purporting to meet the statutory definitions.

Given the conclusory and unsupported allegations, I deny the motion. Nevertheless, I attempt to explain the decisions here with clarity, which I understand to be one of Plaintiff's requested accommodations.

### G. Plaintiff's motion to seal.

Plaintiff moves to seal (Dkt. No. 78) an exhibit (Dkt. No. 76). The exhibit includes publicly filed state court records, Department of Defense records in which personal identifying information ("PII") has been redacted, and credit card statements that do not include PII. (Dkt. No. 76.) Plaintiff has not alleged that these documents are confidential or proprietary, have been designated as confidential or proprietary, or are otherwise entitled to protection from disclosure. *See* D. Minn. L.R. 5.6(c). Nor has he complied with the procedural requirements of the local sealing rule. *See* D. Minn. L.R. 5.6(d). I therefore deny the motion.

# ORDER

Based on the foregoing, and on the files, records, and proceedings herein, IT

IS HEREBY ORDERED THAT:

- Plaintiff's motion to strike defamatory material from Docket No. 18 (Dkt. No. 44) is DENIED.

- Plaintiff's motion for Sanctions under Rule 11 (Dkt. No. 45) is DENIED.

- Plaintiff's ADA Accommodation Motion and Request for Judicial Protection (Dkt. No. 48) is DENIED.

- Plaintiff's motion to seal Docket Number 76 (Dkt. No. 78) is DENIED.

# RECOMMENDATION

Based on the foregoing, and on the files, records, and proceedings herein, IT

IS HEREBY RECOMMENDED THAT:

- Plaintiff's motion to remand to state court (Dkt. No. 13) be DENIED.

- Plaintiff's supplemental motion to remand to state court (Dkt. No. 46) be DENIED.

- Defendant's joint motion to dismiss the complaint (Dkt. No. 17) be GRANTED.

- Plaintiff's motion for default judgment under Rule 55(b) (Dkt. No. 58) be DENIED.

Dated: January 28, 2026                    *s/Elsa M. Bullard*
                                           Elsa M. Bullard
                                           United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).